# In the United States Court of Federal Claims

No. 16-995L

Filed October 9, 2018

_____
)
DUANE OMAR BURNETT, *et al.*,     )
           )
        Plaintiffs,     )     Rails-to-Trails; Fifth Amendment
           )     Takings; National Trails System Act;
v.           )     Missouri Property Law; Fee Simple;
           )     Easement; Notice of Interim Trail Use
THE UNITED STATES,     )     (NITU); Summary Judgment; RCFC 56.
           )
        Defendant.     )
_____)

*J. Robert Sears*, Attorney of Record, *Jacqueline D. Gebhardt*, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, MO, for plaintiffs.

*Lila Jones*, Attorney of Record, *Edward C. Thomas*, *Laura Duncan*, *Jeffrey H. Wood*, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC; *Theodore L. Hunt*, Of Counsel, Associate General Counsel, Surface Transportation Board, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.     INTRODUCTION

Plaintiffs are landowners of property located adjacent to a railroad line owned by the Missouri Central Railroad Company ("MCRR") and they have brought this rails-to-trails action against the United States pursuant to the National Trails Systems Act, 16 U.S.C. §§ 1241-51. *See generally* 4th Am. Compl.  In the fourth amended complaint, plaintiffs allege a Fifth Amendment takings of their reversionary interest in certain property underlying the railroad line, that they allege has been conveyed to MCRR as an easement for railroad purposes, as a result of the Surface Transportation Board's issuance of a Notice of Interim Trail Use on February 25, 2015.  *Id.* at ¶¶ 3-5.

Plaintiffs have filed a motion for partial summary judgment on liability and the government has filed a cross-motion for summary judgment on standing and title issues, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons

set forth below, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** the government's cross-motion for summary judgment.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

This "rails-to-trails" case is one of several cases pending before the Court involving an alleged takings of real property situated along a 144.3 mile rail corridor located in Cass, Pettis, Benton, Morgan, Miller, Cole, Osage, Maries, Gasconade, and Franklin Counties in the State of Missouri.  Pl. Mem. at 1; Def. Ex. 2; Pl. Ex. C.

#### 1.      The National Trails System Act

As background, the Interstate Commerce Act of 1887, ch. 104, 24 Stat. 379, and the Transportation Act of 1920, ch. 91, 41 Stat. 477-78, grant the Interstate Commerce Commission, now the Surface Transportation Board ("STB"), exclusive authority over the construction, operation and abandonment of the Nation's rail lines.  *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981).  In order for a railroad company to terminate rail service, the railroad company must obtain the consent of the STB.  *See Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007).  To obtain consent, the railroad company may apply for permission to discontinue service, seek permission to terminate through abandonment proceedings, or file a request for an exemption from abandonment proceedings.  *See* 49 U.S.C. § 10903(d)(1)-(2); *Barclay*, 443 F.3d at 1371.  Once the STB consents, the rail line is removed from the national transportation system and the STB's jurisdiction comes to an end.  *Barclay*, 443 F.3d at 1371.

In 1983, Congress amended the National Trails System Act to include an alternative process for railroad companies to abandon rail lines.  16 U.S.C. § 1247(d); *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-6 (1990) ("*Preseault I*"); *Caldwell v. United States*, 391 F.3d

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from plaintiffs' fourth amended complaint ("4th Am. Compl."); plaintiffs' motion for partial summary judgment ("Pl. Mot."); plaintiffs' memorandum in support of their motion for partial summary judgment ("Pl. Mem."); plaintiffs' proposed findings of uncontroverted facts ("Pl. Facts") and the exhibits attached thereto ("Pl. Ex."); the government's motion for summary judgment ("Def. Mot."); plaintiffs' opposition thereto ("Pl. Resp."); and the government's reply ("Def. Reply").  Except where otherwise noted, the facts recited here are undisputed.

1226, 1229 (2004) ("*Caldwell II*").  This process, known as "railbanking," preserves corridors or rights-of-way not in use for train service for possible future use as recreational trails.  *Caldwell II*, 391 F.3d at 1229.

In order for a rail line to be "railbanked," the railroad company must first file an abandonment application under 49 U.S.C. § 10903, or a notice of exemption from that process under 49 U.S.C. § 10502.  Once an abandonment application, or request for an exemption, is filed, a party interested in railbanking may request the issuance of a Certificate of Interim Trail Use ("CITU") (in abandonment application proceedings) or a Notice of Interim Trail Use ("NITU") (in abandonment exemption proceedings).  49 C.F.R. § 1152.29(c)-(d).  If the railroad company indicates that it is willing to negotiate a railbanking and interim trail use agreement, the STB issues the CITU or NITU.  *Id.*  The issuance of the CITU or NITU preserves the STB's jurisdiction over the rail line and allows the railroad company to discontinue operations and remove track and equipment while the parties negotiate a railbanking and interim trail use agreement.  *Id.*; *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 711-12 (2011).

The NITU or CITU affords the railroad company 180 days in which to negotiate a railbanking and interim trail use agreement with the third party.  49 C.F.R. § 1152.29(c)(1), (d)(1); *Caldwell II*, 391 F.3d at 1229-30, 1233.  If an agreement is reached, the NITU (or CITU) automatically authorizes the interim trail use.  If the STB takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service.  *Caldwell v. United States*, 57 Fed. Cl. 193, 195 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004) ("*Caldwell I*") (internal citations omitted); *see also* 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(d)(2).  If no agreement is reached, the railroad company may proceed with the abandonment process.  49 C.F.R. § 1152.29(d)(1), (e)(2).

### 2.    The Rock Island Line

The railroad line at issue in this case is a 144.3 mile long rail corridor commonly known as the Rock Island Line (the "Rock Island Line").  Def. Ex. 2 at 22; Pl. Ex. C at 22.  This rail corridor extends across the center of the State of Missouri, from Pettis County to Franklin County.  Def. Ex. 2 at 22; Pl. Ex. C at 22.

Built in the early 1900s, the Rock Island Line was originally part of the Chicago, Rock Island and Pacific Railroad Company. Def. Ex. 2 at 16; Pl. Ex. C at 16. Several different railroad companies owned the Rock Island Line until 1999, when the Missouri Central Railroad Company acquired the rail line. Def. Ex. at 16-17; Pl. Ex. C at 16-17.[2]

On November 18, 2014, MCRR filed a verified notice of exemption with the STB to abandon its interest in the Rock Island Line. Def. Ex. 3; Pl. Ex. B. On December 16, 2014, the Missouri Department of Natural Resources ("MDNR") filed a request for the issuance of a NITU to allow the department to negotiate with MCRR for the acquisition of the rail corridor for use as a trail under the National Trails Systems Act. Def. Ex. 4; Pl. Ex. D.

The STB issued the NITU on February 25, 2015. Def. Ex. 5; Pl. Ex. A. Although the original NITU would have expired 180 days thereafter, the MCRR has requested and received multiple extensions of the NITU. Def. Ex. 6; Pl. Ex. E. The current expiration date of the NITU is February 21, 2019. Def. Ex. 6; Pl. Ex. E. And so, to date, no railbanking and interim-trail-use agreement is in place with respect to the Rock Island Line. *See* Def. Ex. 6; Pl. Ex. E.

### 3. The Disputed Parcels

This takings matter involves 29 claims related to 38 plaintiffs and 29 parcels located along the Rock Island Line. *See generally* 4th Am. Compl. Eighteen claims—involving 23 plaintiffs—are addressed in the parties' cross-motions for summary judgment. *See generally* Pl. Mot.; Pl. Mem.; Def. Mot.[3]

The relevant claims are described in the table below:

| Claim No. | Plaintiffs | Parcel No. | County |
|---|---|---|---|
| 1 | Robert J. Atkins | 25-1-11.0-1-099-061.000 | Franklin |
| 2 | Belle Community Fair, Inc. | 01-4.0-20-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.00 | Maries |
| 3 | Duane Omar & Darlene E. Burnett | 16-1.0-11-000-000-011.002 | Gasconade |
| 5 | Roscoe Charles & Daisy M. Durbin | 01-4.0-20-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.00 | Maries |
| 6 | J. Juanita Griggs | 01-5.0-21-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.00 | Maries |

---

[2] In 2004, the Central Midland Railway Company obtained lease and operating rights to the Rock Island Line, but MCRR retained ownership of the rail corridor. Def. Ex. 2 at 17; Pl. Ex. C at 17.

[3] On October 4, 2017, the Court dismissed claim numbers 14 and 16. *See* Order, dated Oct. 4, 2017 (docket entry no. 24). The parties agree that MCRR holds easements limited to railroad purposes for claim numbers 4a, 4b, 8, 9, 15, and 18. *See* Joint Status Report, dated Jan. 8, 2018, at Ex. 1 (docket entry no. 29). The parties also agree that plaintiffs have "no claim" for claim numbers 17b, 17c, and 17d. *Id.*

| Claim No. | Plaintiffs | Parcel No. | County |
|-----------|-----------|-----------|--------|
| 7 | Howard & Marie O. Holaway | 24-2-03.0-0-000-003.000 | Franklin |
| 10 | Estate of Patricia Kinkead | 25-1-01.0.3-002-046.000 | Franklin |
| 11 | Sonny & Charlotte Lemons | 19501500000000200 | Osage |
| 12 | Wayne M. & Gloria Misner | 14-9.0-29-004-001.001.000 | Gasconade |
| 13a | Tami Luehr Morton | 25-1-01.0-3-002-042.000 | Franklin |
| 13b | Tami Luehr Morton | 25-1-01.0.3-002-043.100 | Franklin |
| 17a | Oral D. Seymour | 02-6.0-23-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.00 | Maries |
| 19 | Martin Five Ltd. Partnership | 25-1-11.0-1-001-074.000 | Franklin |
| 20 | Everett Turner | 01-4.0-20-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.00 | Maries |
| 21 | James Daren Zumwalt | 19-6.0-14-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.00 | Osage |
| 22a | Value Investments, LLC, Estate of John H. & Temple Lee Vance | 25-1-11.0-1-004-095.000 | Franklin |
| 22b | Value Investments, LLC, Estate of John H. & Temple Lee Vance | 25-1-11.0-1-004-096.000 | Franklin |
| 23 | JHV Holdings, LLC | 25-1-11.0-1-004-149.000 | Franklin |

### B.   Procedural Background

On August 12, 2016, plaintiffs filed the complaint. *See generally* Compl. On August 15, 2016; April 4, 2017; May 15, 2017; and February 20, 2018, plaintiffs filed amended complaints. *See generally* 1st Am. Compl.; 2d Am. Compl.; 3d Am. Compl.; 4th Am. Compl.

On March 16, 2018, plaintiffs filed a motion for partial summary judgment on liability. *See generally* Pl. Mot. On April 16, 2018, the government filed a cross-motion for summary judgment on standing and title issues. *See generally* Def. Mot. On May 30, 2018, plaintiffs filed a reply in support of their motion for partial summary judgment and a response and opposition to the government's cross-motion for summary judgment. *See generally* Pl. Resp. On July 13, 2018, the government filed a reply in support of its cross-motion for summary judgment. *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Jurisdiction

The Tucker Act grants this Court jurisdiction over Fifth Amendment takings claims brought against the United States. *See* 28 U.S.C. § 1491; *Morris v. United States*, 392 F.3d

1372, 1375 (Fed. Cir. 2004) ("[T]he Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.").

### B.    Summary Judgment

A grant of summary judgment is appropriate when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.  A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ."  *Id.*

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)).  In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505; *Agosto v. INS*, 436 U.S. 748, 756, 98 S. Ct. 2081, 56 L. Ed. 2d 677 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."); *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ."  *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

The above standard applies when the Court considers cross-motions for summary judgment.  *See Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  And so, when both parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.    Fifth Amendment Takings And "Rails-to-Trails" Cases

A Fifth Amendment takings occurs in rails-to-trails cases when the government, through the issuance of a CITU or NITU, destroys an individual's state law reversionary interest in property underlying a railroad right-of-way. *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010); *Barclay*, 443 F.3d at 1373 ("The issuance of the NITU is the only event that must occur to 'entitle the plaintiff to institute an action.' Accrual is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way.") (internal citations omitted); *Caldwell I*, 391 F.3d at 1233-34. "[O]nly persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

To determine whether a Fifth Amendment takings has occurred in a rails-to-trails case, the Court follows a three-part analysis established by the United States Court of Appeals for the Federal Circuit. *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) ("*Preseault II*")). First, the Court must determine who owned the land at issue at the time of the takings, and specifically, whether the railroad company owned the land in fee simple or held only an easement. *Id.* Second, if the railroad company owned only an easement, the Court must determine whether the terms of the easement are limited to use for railroad purposes, or whether the terms include use as a public recreational trail. *Id.* Third, if the railroad company's easement is broad enough to encompass recreational trail use, the Court must determine whether the easement terminated prior to the alleged takings, so that the property owner held a fee simple estate unencumbered by easement at the time of the takings. *Id.*

### D.    Missouri Property Law

To determine whether the railroad company held an easement, or held the property in fee simple at the time of the takings, the Court looks to the law of the state in which the property is located. *Preseault II*, 100 F.3d at 1540. Because the Rock Island Line is located in the State of Missouri, Missouri law applies in this case. *Preseault I*, 494 U.S. at 20-21 (O'Connor, J., concurring).

Under Missouri law, the "cardinal rule" for deed interpretation is "to ascertain the intention of the parties and to give that intention effect." *Hinshaw v. M-C-M Props., LLC*, 450

7

S.W.3d 823, 827 (Mo. Ct. App. 2014) (quoting *Dean Machinery Co. v. Union Bank*, 106 S.W.3d
510, 520 (Mo. Ct. App. 2003)).  In interpreting a deed, it is necessary to determine the intention
of the grantor and to give effect to that intention unless it contradicts existing case law.  *See St.
Louis Union Trust Co. v. Clarke*, 178 S.W.2d 359, 363 (Mo. 1944).  And so, the Court must
"take the deed as a whole" and not "give any clause in the deed undue preference."  *Id.*

 In this regard, a single deed can contain multiple forms of conveyances depending upon
the language applied to each tract.  *See Clevenger v. Chi., Milwaukee & St. Paul Ry. Co.*, 210
S.W. 867, 868 (Mo. 1919).  Missouri courts have consistently applied three factors to determine
whether a tract of land is passed to a railroad in fee simple, as an easement, or if it is subject to
later reversion to the grantor or her heirs:  "(1) whether the deed includes language conveying a
'right of way,' (2) the amount of consideration, and (3) language in the deed limiting the use of
the land for railroad purposes."  *Moore v. Mo. Friends of the Wabash Trace Nature Trail, Inc.*,
991 S.W.2d 681, 685-86 (Mo. Ct. App. 1999).

 In addition, it is well-settled under Missouri law that when a railroad acquires a right-of-
way, it acquires merely an easement over the land and not an interest in fee simple.  *Schuermann
Enters., Inc. v. St. Louis County*, 436 S.W.2d 666, 669 (Mo. 1969) ("[W]here the interest
conveyed is limited to right of way or for right of way the estate conveyed is an easement
only."); *see also Brown v. Weare*, 152 S.W.2d 649, 652 (Mo. 1941) ("The law is settled in this
state that where a railroad acquires a right of way whether by condemnation, by voluntary grant
or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement
over the land and not the fee.").  And so, Missouri courts have held that the conveyance of a
right-of-way indicates an "intention to part with less than the fee."  *Powell v. St. Louis County*,
446 S.W.2d 819, 822 (Mo. 1969).

 The Missouri Revised Statute also provides that railroad corporations have the ability to
"take and hold" voluntary grants of real estate.  Mo. Rev. Stat. § 388.210.  Specifically, the
statute provides that:

> Every corporation formed under this chapter shall, in addition to the powers herein
> conferred, have power: . . . (2) [t]o take and hold such voluntary grants of real estate
> and other property as shall be made to it to aid in the construction, maintenance and
> accommodation of its railroads; but the real estate received by voluntary grant shall
> be held and used for the purpose of such grant only. . . .

*Id.* The term "voluntary grant" has been used by the Missouri state legislature to mean a "conveyance without valuable consideration." *See Brown*, 152 S.W.2d at 653.

In this regard, Missouri courts have held that a lack of valuable consideration indicates the conveyance of an easement rather than a conveyance in fee simple absolute. *See id.* But, Missouri courts have recognized that any "sum of money in excess of one cent, one dime, or one dollar . . . is a valuable consideration within the meaning of the law of conveyancing." *See id.*; *see also Allaben v. Shelbourne*, 212 S.W.2d 719, 723 (Mo. 1948); *City of Columbia v. Baurichter*, 729 S.W.2d 475, 480 (Mo. Ct. App. 1987) ("The stated consideration therein was nominal, $1, not a sum that would suggest purchase of a fee simple interest . . . ."). Valuable consideration can also be non-monetary in nature, and may encompass benefits such as the construction of a building. *See Bayless v. Gonz*, 684 S.W.2d 512, 513 (Mo. Ct. App. 1984) ("The deed also states the grant was made for valuable consideration, namely: five dollars and the location of a depot. Either of these constitutes valuable consideration.").

Missouri courts have also recognized that the use of the words "[g]rant, [b]argain and [s]ell" in a deed is indicative of a fee simple title. *Nixon v. Franklin*, 289 S.W.2d 82, 88 (Mo. 1956); *see also* Mo. Rev. Stat. § 442.420. And so, Missouri courts have recognized that a deed of conveyance containing the words "grant, bargain and sell" have been held to import the vesting of a fee simple title. *Nixon*, 289 S.W.2d at 88; *see also University City v. Chicago, R.I. & P. Ry. Co.*, 149 S.W.2d 321, 325 (Mo. 1941) (observing that the words "grant, bargain and sell" were made by statute to "import a conveyance in fee simple with warranties unless expressly restrained by other language in the instrument").

With regards to the scope of an easement, Missouri courts have also recognized that any language limiting the scope of an easement must be expressly mentioned within the deed. *See Powell*, 446 S.W.2d at 822. If a limitation on the scope of an easement is to be imposed, then "it must 'be necessarily implied in the terms of the grant,' an express limitation not being involved." *Id.* (holding that, in the absence of limiting language, the deed imposed "no limitation upon the grantees' use of the property"). Given this,

> [I]f the grant or conveyance contains words of restriction and limitation to the clear effect that the right of way granted thereby shall be used only for certain specific railroad purposes, it can lawfully be used only for those purposes which fall within

the scope of the provision, and for none other.

*Rombauer v. St. Louis-San Francisco Ry. Co.*, 34 S.W.2d 155, 157 (Mo. Ct. App. 1931).

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on liability and title issues on four key issues:  (1) whether MCRR owns the property at issue in this dispute in fee simple, or holds only an easement; (2) whether certain plaintiffs own in fee simple parcels that are adjacent to the Rock Island Line; (3) if MCRR owns only an easement, whether the easement is limited to use for railroad purposes, or is broad enough to encompass public recreational trail use; and (4) whether the Court can determine at this time if there has been a temporary or permanent takings of plaintiffs' property.  Pl. Mem. at 10-30; Def. Mot. at 9-41.

In their motion for partial summary judgment, plaintiffs argue that the undisputed material facts in this matter establish that they own a fee simple interest in the property in dispute.  Pl. Mem. at 10-15.  Plaintiffs further argue that the scope of the easements acquired by MCRR with respect to this property is limited to use for railroad purposes and that public recreational trail use falls beyond the scope of these easements.  *Id.* at 15-30.  In addition, plaintiffs contend that the Court can resolve the issue of whether a temporary or permanent takings of their property has occurred and that the issuance of the NITU constitutes a permanent takings of their property.  Pl. Resp. at 13-15.  And so, plaintiffs request that the Court find the government liable for a takings of their property.  *Id.* at 16.

In its cross-motion, the government argues that there can be no takings of plaintiffs' property because the undisputed material facts in this matter show that MCRR owns the rail corridor located adjacent to certain plaintiffs' property.  Def. Mot. at 12-16.  The government further argues that plaintiffs Wayne and Gloria Misner have not shown that they own property located adjacent to the rail corridor.  *Id.* at 20-22.  In addition, the government contends that, to the extent that MCRR does not own the relevant property in fee simple, the source deeds for the remaining claims in dispute convey easements to MCRR that are broad enough to encompass public recreational trail use and railbanking.  *Id.* at 22-40.  Lastly, the government contends that the Court cannot yet determine whether a temporary or permanent takings has occurred in this case, because, among other things, there is no trail use agreement in place and the MCRR has not consummated abandonment.  *Id.* at 40; Def. Reply at 14-15.  And so, the government requests

that the Court enter summary judgment in its favor with respect to standing and title issues.  Def. Mot. at 41.

For the reasons discussed below, the undisputed material facts in this matter show that MCRR owns in fee simple the property associated with claims 1 (Atkins); 10 (Kinkead); 13a and b (Morton); 19 (Martin Five Ltd. Partnership); 22a and b (Value Investments LLC, Estate of John H. and Temple Lee Vance); and 23 (JHV Holdings, LLC).  The undisputed material facts also show that plaintiffs Wayne and Gloria Misner (claim 12) did not own property located adjacent to the rail corridor at the time of the issuance of the NITU.

In addition, the undisputed material facts show that the relevant source deeds for the remaining nine claims—claims 2 (Belle Community Fair); 3 (Burnett); 5 (Durbin); 6 (Griggs); 7 (Holaway); 11 (Lemons); 17a (Seymour); 20 (Turner); and 21 (Zumwalt)—convey easements to MCRR that are broad enough to encompass public recreational trail use.  And so, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability and **GRANTS** the government's cross-motion for summary judgment on standing and title issues.

### A.      MCRR Owns A Fee Simple Interest In The Parcels Associated With Claims 1, 10, 13a, 13b, 19, 22a, 22b, And 23

As an initial matter, the undisputed material facts in this matter show that MCRR owns in fee simple the property at issue with respect to plaintiffs' claims 1 (Atkins); 10 (Kinkead); 13a and b (Morton); 19 (Martin Five Ltd. Partnership); 22a and b (Value Investments LLC, Estate of John H. and Temple Lee Vance); and 23 (JHV Holdings, LLC).  And so, the Court **DENIES** plaintiffs' partial motion for summary judgment and **GRANTS** the government's cross-motion for summary judgment with respect to these claims.

### 1.      MCRR Owns The Rail Corridor Adjacent To The Parcels For Claims 10, 13a, and 13b

A careful reading of the source deed relevant to the parcels associated with plaintiffs' claims 10 (Kinkead) and 13a and b (Morton) makes clear that MCRR owns these parcels in fee simple.  The parties agree that the applicable source deed for these claims is Peppard 30/508 and that Missouri property law applies in this case.[4]  Def. Mot. at 12-13; Pl. Mem. at 19.  And so, the

---

[4] The government identifies the Peppard 30/508 and Fitzgerald 30/501 Deeds as the applicable source deeds.  *See* Def. Ex. 1 at 1-2.

Court begins its analysis by construing the conveyance language contained in this deed under Missouri property law to determine who owned the land at issue at the time of the alleged takings. *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault II*, 100 F.3d at 1533).

> The Peppard 30/508 Deed contains the following conveyance language:
>
> Witnesseth, that the said party of the First Part, *in consideration of one dollar and the building*, maintaining and operating of a Railroad by the said party of the Second Part, its successors and assigns do by these presents *grant bargain and sell*, convey and confirm unto the said party of the Second Part, its successors and assigns . . . a strip of land one hundred feet in width . . . having an equal and uniform width of fifty feet on each side of the centre [sic] line of said Railroad as it shall be located.

Def. Ex. 7 at 4 (emphasis added).  The Court reads this language to convey a fee simple interest to MCRR for several reasons.

First, the language in the aforementioned granting clause states that the owners do "grant bargain and sell" to the railroad. *Id.* This language conveys a fee simple interest to the railroad under Missouri law.

The Supreme Court of Missouri has long recognized that the words "grant, bargain and sell" evidence the conveyance of a fee simple interest, unless such a conveyance is expressly restricted by other language in the deed. *See University City v. Chicago, R.I. & P. Ry. Co.*, 149 S.W.2d 321, 325 (Mo. 1941) (holding that the words "grant, bargain and sell" by statute were made to import a conveyance in fee simple with warranties, unless expressly restrained by other language in the instrument); *Nixon v. Franklin*, 289 S.W.2d 82, 88 (Mo. 1956) (holding that the words "Grant, Bargain and Sell" by force of statute have been held to import the vesting of a fee simple title).  The Court does not find—and plaintiffs do not identify—any language in the Peppard 30/508 Deed that would expressly restrict the conveyance of a fee simple interest to the railroad in this case.[5] *See generally* Pl. Mem. at 27-28; Pl. Resp. at 2.  In fact, the granting clause for the Peppard 30/508 Deed also states that "it being expressly understood and agreed . . .

---

[5] The government also notes in its cross-motion that Missouri courts have held that the phrase "strip of land," which also appears in the granting clause for the Peppard 30/508 Deed, describes the conveyance of a fee simple interest.  Def. Mot. at 13; *see City of Columbia v. Baurichter*, 729 S.W.2d 475, 479 (Mo. Ct. App. 1987) (finding that "[t]he language 'strip . . . of land' appears to describe a conveyance of a fee simple absolute" but that other language in the granting clause limited the conveyance).

that the title *in fee simple* acquired by [the railroad] shall be confined to the strip of land first mentioned above."  Def. Ex. 7 at 4 (emphasis supplied).  And so, the Court reads the granting clause of the Peppard 30/508 Deed to indicate that the parties intended to convey a fee simple interest to the railroad.

The Court is also unpersuaded by plaintiffs' argument that the Peppard 30/508 Deed conveys only an easement to MCRR, because the conveyance lacks valuable consideration and is, thus, a voluntary grant under Missouri law.  Pl. Mem. 19-21.  The Peppard 30/508 Deed describes the consideration given as "one dollar and the building, maintaining and operating of a Railroad."  Pl. Mem. at 19-21; Def. Exs. 7-8, 10.  This language clearly provides valuable consideration under Missouri law.  *See Bayless*, 684 S.W.2d at 513; *Brown*, 152 S.W.2d at 653. In fact, Missouri courts have recognized that any consideration "in excess of one cent, one dime, or one dollar . . . is valuable consideration within the meaning of the law of conveyancing."  *See Brown*, 152 S.W.2d at 653.  Missouri courts have similarly recognized that consideration may be non-monetary in nature and may include the construction of a building or depot under Missouri law, which is the case here.  *See Bayless*, 684 S.W.2d at 513.  And so, here, the combination of one dollar and "the building, maintaining and operating of a Railroad" as the consideration given in the Peppard 30/508 Deed is valuable consideration that is sufficient to convey a fee simple interest to the railroad under Missouri law.

The Court's reading of the Peppard 30/508 Deed to convey a fee simple interest to MCRR is further reinforced by the habendum clause in this deed.  This clause states that:

> To Have and to Hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining unto the said party of the Second Part and unto its successors and assigns forever.

Def. Ex. 7.  In *Bayless v. Gonz*, the Missouri Court of Appeals held that very similar language reflects "the language of the fee simple warranty deed."  *Bayless*, 684 S.W.2d at 513 (holding that language stating "to have and to hold the same together with all singular rights, immunities, privileges and appurtenances to the same" conveys a fee simple interest).  And so, in light of the plain language contained in the Peppard 30/508 Deed's granting and habendum clauses, the Court reads the Peppard 30/508 Deed to convey a fee simple interest in the parcels associated with claims 10 and 13a and b.

13

**2.      MCRR Owns The Corridor Adjacent To
The Parcels For Claims 1, 19, 22a, 22b, And 23**

The undisputed material facts in this matter also show that MCRR owns a fee simple
interest in the parcels associated with plaintiffs' claims 1 (Atkins); 19 (Martin Five Ltd.
Partnership); 22a and b (Value Investments, LLC, Estate of John H. and Temple Lee Vance); and
23 (JHV Holdings, LLC).  The parties disagree about which deeds are the applicable source
deeds for these parcels.  Def. Mot. at 15-17; Pl. Mem. at 16-19.  And so, the Court begins the
analysis of these claims by first determining the applicable source deeds for each of these
parcels.

In this regard, the government argues that the source deeds for all of these claims are the
Fitzgerald 30/501 and Fitzgerald 30/500 Deeds.  Def. Mot. at 15.  Plaintiffs counter that, in
addition to these two deeds, four other deeds are also relevant to their claims:  the Armstrong
53/345; Fitzgerald 53/333; Fitzgerald 53/335; and Fitzgerald 53/497 Deeds.  Pl. Mem. at 19.[6]
The Court agrees with the government that the applicable source deeds for these claims are the
Fitzgerald 30/501 and 30/500 Deeds.

A careful review of the Fizgerald 30/501 and 30/500 Deeds makes clear that these deeds
pre-date the four deeds relied upon by plaintiffs by more than a decade.  The Fitzgerald 30/501
and 30/500 Deeds were executed in 1886.  Def. Exs. 8, 10 (providing deeds dated August 11,
1886).  But, the deeds relied upon by the plaintiffs were executed in 1900.  Def. Exs. 11-14
(providing deeds dated in September and November 1900).  A review of the Armstrong 53/345;
Fitzgerald 53/333; Fitzgerald 53/335; and Fitzgerald 53/497 Deeds also shows that these later
deeds convey property that is located within the same geographical area first conveyed to the
railroad in 1886 under the Fitzgerald 30/501 and 30/500 Deeds.  *Compare* Def. Ex. 8 (providing
the Fitzgerald 30/501 Deed, granting a "strip of land" in "Sections Eleven (11), Twelve (12), and
one (1) Township no. forty two Range no. four W. County of Franklin and State of Missouri" to
the Railroad), *and* Def. Ex. 10 (providing the Fitzgerald 30/500 Deed, conveying a "strip of

---

[6] For claims 1 and 23, plaintiffs argue that the controlling deeds are the Armstrong 53/345 and Fitzgerald
53/333 Deeds.  Pl. Mem. at 16, 19.  For claims 19 and 22a and b, the parties agree that the Fitzgerald
30/501 and Fitzgerald 30/500 Deeds are the source deeds, but plaintiffs argue that the Fitzgerald 53/335
and Fitzgerald 53/497 Deeds are also source deeds for claim 19.  *Id.* at 18-19.  In addition, plaintiffs argue
that the Fitzgerald 53/335; Armstrong 53/345; and Fitzgerald 53/333 Deeds are also source deeds for
claims 22a and b.  *Id.*

land" to the Railroad "lying and being in the Section no. Eleven Township no. forty two Range no. four W, County of Franklin and State of Missouri"), *with* Def. Exs. 11-14 (providing the Armstrong 53/345; Fitzgerald 53/333; Fitzgerald 53/335; and Fitzgerald 53/497 Deeds conveying only portions of those lands and transferring easements in both "Section Eleven (11) Township forty two (42) and Range four (4) West" and in "section twelve (12) . . . of Township forty two (42) and Range four (4) West"). In addition, a careful review of the Armstrong 53/345, Fitzgerald 53/333, Fitzgerald 53/335, and Fitzgerald 53/497 Deeds shows that these source deeds do not contain any language that would limit or rescind the primary conveyances to the railroad contained in the earlier Fitzgerald 30/501 or Fitzgerald 30/500 Deeds. *Compare* Def. Exs. 11-14, *with* Def. Exs. 8, 10. Because the undisputed material facts in this case show that the Fitzgerald 30/501 and Fitzgerald 30/500 Deeds were the first filed, that these deeds convey property that is located within the same geographic area as the subsequent deeds relied upon by plaintiffs, and that there is no language in these subsequent deeds to rescind the prior grants to the railroad, the Court concludes that these are the source deeds for the parcels associated with claims 1, 19, 22a and b, and 23.

Having determined that the Fitzgerald 30/500 and Fitzgerald 30/501 Deeds are the applicable source deeds for these claims, the Court must next determine whether these deeds convey a fee simple interest to the railroad. In this regard, it is notable that the Fitzgerald 30/500 and Fitzgerald 30/501 Deeds contain the exact same granting clause language contained in the Peppard 30/508 Deed discussed above. Def. Exs. 8, 10. These two deeds also contain the same habendum clause discussed above with regards to the Peppard 30/508 Deed. *Id.* Given this, the plain language of these deeds shows that the deeds convey a fee simple interest in the parcels associated with plaintiffs' claims 1, 10, 13a and b, 19, 22a and b, and 23 to the railroad. And so, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** the government's cross-motion for summary judgment with respect to these claims.

### B.   Plaintiffs Wayne And Gloria Misner Have Not Shown That Their Parcel Is Adjacent To The Rail Corridor

The undisputed material facts in this matter also show that plaintiffs Wayne and Gloria Misner (claim 12) did not own property located adjacent to the rail corridor at issue on the date of the issuance of the NITU. And so, the Court must deny these plaintiffs' takings claim.

It is well-established that plaintiffs must prove that they have an ownership interest in the portions of the rail corridor at issue in this case to pursue their takings claim. *Ellamae Phillips Co.*, 564 F.3d at 1373. And so, if plaintiffs fail to establish that they own property adjacent to the rail corridor covered by the NITU, they cannot prevail upon their takings claim in this litigation.

The undisputed material facts show that Wayne and Gloria Misner did not own property located adjacent to the portion of the rail corridor that is covered by the NITU, because MCRR was not the owner of the portion of the rail corridor located adjacent to their property at the time of the issuance of the NITU. In this regard, plaintiffs do not dispute that the Misners' parcel is located next to a parcel of land known as the ICC Valuation Parcel 13—property located to the northwest of the rail corridor. Pl. Resp. at 4; *see also* Def. Mot. at 20-22. There is also no dispute that MCRR's predecessor-in-interest—Union Pacific Railroad Company—quitclaimed the ICC Valuation Parcel 13 to another company—GRC Holdings—in 1999. Def. Mot. at 21; *see* Pl. Resp. at Ex. Q; Def. Ex. 24 at 9.

It is similarly without dispute that GRC Holdings did not convey the ICC Valuation Parcel 13 to MCRR when MCRR acquired the rail corridor in 1999.[7] Def. Mot. at 21; Pl. Resp. at 4; *see also* Def. Ex. 25 at 2, 27. And so, there is no genuine dispute in this case that MCRR did not acquire an ownership interest in the ICC Valuation Parcel 13 when the railroad acquired the rail corridor in 1999. Because MCRR did not own the ICC Valuation Parcel 13 on the date of the issuance of NITU, this parcel is not covered by the NITU. *See generally* Def. Ex. 5. And so, the undisputed material facts here show that Wayne and Gloria Misner do not own property located adjacent to the rail corridor that is at issue in this case.

The Court is also unpersuaded by plaintiffs' argument that the Misners' parcel is located adjacent to the rail corridor at issue in this case because MCRR is a corporate subsidiary of the actual owner of the ICC Valuation Parcel 13—GRC Holdings. Pl. Resp. at 4. Even if a corporate relationship between MCRR and GRC Holdings exists, plaintiffs fail to explain why the Court should consider MCRR and GRC Holdings to be the same entity for the purpose of determining who owns the portion of the rail corridor located adjacent to the Misners' parcel.

---

[7] The government explains in its reply brief that GRC Holdings conveyed an easement in this particular portion of the rail corridor to MCRR. Def. Reply at 8.

*See Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. Ct. App. 2014) (explaining that "two separate corporations are regarded as wholly distinct legal entities, even if one partly or wholly owns the other").  Given this, the undisputed material facts here show that the Misners did not own property located adjacent to the portion of the rail corridor owned by MCRR on the date of the issuance of the NITU.  And so, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** the government's cross-motion for summary judgment with respect to claim 12.

### C.    The Remaining Claims (2, 3, 5, 6, 7, 11, 17a, 20, and 21) Involve Easements Broad Enough To Encompass Public Recreational Trail Use

Lastly, the undisputed material facts in this case show that MCRR holds easements that are broad enough to encompass public recreational trail use with respect to the remaining nine claims in dispute.

With respect to the remaining nine claims, the parties agree that the Backues 14/199, Dreysse 14/146, Francis 27/251, Luster 16/606, C.C. Linke 16/607, Ridenhour 14/215, Stock 27/3, and Strehlmann 53/421Deeds are the applicable source deeds for these claims.  Pl. Mem. at 16-18; Def. Mot. at 26-27.  The parties also agree that these deeds convey easements to MCRR under Missouri law, because the amount of consideration given is only one dollar.  Pl. Mem. at 16-18; Def. Mot. at 25-27; *see Moore*, 991 S.W.2d at 687 (holding that a lack of valuable consideration indicates the conveyance of an easement rather than a conveyance in fee simple absolute); *see also* Def. Exs. 29, 31, 33-38 (stating that the conveyances are "in consideration of One Dollar[]"); Pl. Resp. at 8-13.  And so, the remaining issue for the Court to resolve with respect to these claims is whether the scope of the easements conveyed to MCRR includes use as a public recreational trail.  *See Ellamae Phillips Co.*, 564 F.3d at 1373 (stating that if the railroad company owned only an easement, the Court must determine whether the terms of the easements are limited to use for railroad purposes, or whether the terms include use as a public recreational trail).  For the reasons discussed below, the Court finds that it does.

**1.      There Is No Presumption Under Missouri Law That
MCRR's Easements Are Limited To Railroad Purposes**

First, Missouri law does not require that the property conveyed to MCRR through a
voluntary grant be used only for railroad purposes.[8]  In their motion for partial summary
judgment, plaintiffs argue that all of the easements conveyed to MCRR must be limited to use
for railroad purposes, because Missouri courts have never found a deed to a railroad to be any
broader than a railroad purpose deed.  Pl. Mem. at 25-26.  To support this argument, plaintiffs
point to the Missouri Constitution, which states, in relevant part, that '"[t]he fee of land taken for
railroad purposes without consent of the owner thereof shall remain in such owner subject to the
use for which it is taken.'"  *Id.* at 25 (quoting Mo. Const. art. I, § 26).  And so, plaintiffs contend
that MCRR could not have obtained an easement for any use other than use for railroad purposes
and the Court need only look "to see if the deed specifically allows some purpose other than a
railroad purpose" to determine the scope of the easements conveyed to MCRR.  Pl. Resp. at 10;
*see* Pl. Mem. at 24-26.

Plaintiffs' argument is misguided.  While the Missouri Constitution does provide that a
railroad obtains an easement that may only be used for railroad purposes when it obtains real
estate through *condemnation*, this constitutional provision does not address other circumstances
where a railroad obtains an easement.  Mo. Const. art. I, § 26; Def. Mot. at 34-35.  Neither party
claims that the railroad obtained easements through condemnation for any of the claims at issue.
*See* Pl. Mem. at 25-26; Def. Mot. 34-35; *see also* Pl. Mem. at 21 (addressing claims which are
not in dispute).  And so, this constitutional provision is inapplicable to plaintiffs' claims.

Plaintiffs correctly observe that the Missouri statute that governs voluntary grants of real
estate "to aid in the construction, maintenance and accommodation of its railroads" provides
that "the real estate received by voluntary grant shall be held and used for the purpose of such

---

[8] It is well-established that, if MCRR owns only an easement with respect to the remaining parcels in
dispute, the Court must determine whether the scope of the easement is limited to use for railroad
purposes, or whether the terms of the easement include use as a public recreational trail.  *See Ellamae
Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100
F.3d 1525, 1533 (Fed. Cir. 1996)).  If the railroad company's easement is broad enough to encompass
recreational trail use, the Court must also determine whether the easement terminated prior to the alleged
takings, so that the property owner held a fee simple estate unencumbered by an easement at the time of
the takings.  *Id.*  And so, the Court begins its analysis by reviewing the applicable source deeds to
determine the scope of the easements conveyed to MCRR in this case.

grant only." Mo. Rev. Stat. § 388.210.  But, this statute does not expressly limit such voluntary grants to use for railroad purposes.  *Id.*[9]  Given this, the Court simply does not agree with plaintiffs that Missouri law limits the easements conveyed to MCRR to use for railroad purposes.

### 2.      The Source Deeds Convey Easements That Are Broad Enough To Encompass Trail Use And Railbanking

A review of the source deeds applicable to the remaining nine claims also makes clear that the primary conveyances to the railroad in these deeds are broad enough to encompass public recreational trail use.  In fact, each of the source deeds contains essentially identical granting and habendum clauses that demonstrate that the easements conveyed to MCRR were not limited to use for railroad purposes.[10]

In this regard, the granting clauses in these deeds state that:  "the parties of the first part . . . do by these presents, *grant, bargain and sell*, convey and confirm unto said party of the second part . . ." the property conveyed.  Def. Exs. 29, 31, 33-38 (emphasis supplied.).  As discussed above, the inclusion of the phrase "grant, bargain and sell" in a conveyance deed has long been interpreted under Missouri law to convey a fee simple interest.  *Nixon*, 289 S.W.2d at 88.  While there is no dispute that a fee simple interest was not conveyed to the railroad here— given that the consideration provided in these deeds is only one dollar—the inclusion of the phrase "grant, bargain and sell," nonetheless, indicates that the parties intended to convey a broad easement to the railroad.  This view is reinforced by the fact that the granting clauses for

---

[9] Section 388.210 of the Missouri Revised Statutes provides that:

> Every corporation formed under this chapter shall, in addition to the powers herein conferred, have power: . . . (2) [t]o take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only. . . .

Mo. Rev. Stat. § 388.210.  Missouri courts have also recognized that the term "voluntary grant" has been used by the Missouri state legislature to mean a "conveyance without valuable consideration."  *See Brown v. Weare*, 152 S.W.2d 649, 653 (Mo. 1941).

[10] The Court does not find the language in the Backues 14/199, Dreysse 14/146, Francis 27/251, Luster 16/606, C.C. Linke 16/607, Ridenhour 14/215, Stock 27/3, or Strehlmann 53/421 Deeds to be ambiguous.  *See* Def. Exs. 29, 31, 33-38.  And so, the Court does not consider extrinsic evidence or the parties' arguments on extrinsic evidence.  *See Behrens v. United States* 135 Fed. Cl. 66, 69 (2017); *see generally* Pl. Mem. at 29-30; Def. Mot. at 38-39; Pl. Resp. at 12-13; Def. Reply at 12-14.

these source deeds do not contain any language to limit the scope of the easements conveyed. *See* Def. Exs. 29, 31, 33-38.

In addition, the habendum clauses for the applicable source deeds similarly indicates that the parties intended to convey a broad easement to MCRR.  These clauses state, in relevant part, that property is conveyed to the railroad:  "To have and to hold the same, together with all rights, immunities, privileges and appurtenances to the same belonging to the [railroad] and to its successors and assigns forever."  Def. Exs. 29, 31, 33-38.  As discussed above, Missouri courts have interpreted such language to convey a fee simple interest.  *Bayless*, 684 S.W.2d at 513. And so, again, the Court construes the applicable source deeds for the remaining claims in this case to convey a broad easement to the railroad.  *See* Def. Exs. 29, 31, 33-38.[11]

Indeed, while plaintiffs correctly argue that the source deeds do not contain any language that specifically mentions trail use or railbanking, plaintiffs fail to explain why it is necessary for the deeds to contain such language in order to convey an easement to the railroad that is broad enough to encompass public recreational trail use.  Pl. Mem. at 25-28; Pl. Resp. at 9-10. Because the plain language in the source deeds makes clear that the parties intended to convey a broad easement to the railroad—and not to limit this easement to use for railroad purposes—the Court concludes that the source deeds relevant to plaintiffs' remaining claims convey easements that can encompass public recreational trail use.

### 3.    The Secondary Conveyances Do Not Limit The Easements

The Court also concludes that the secondary conveyances contained in several of the applicable source deeds do not limit the scope of the broad easements conveyed to MCRR. Plaintiffs correctly observe that the Backues 141/99 and Dreysse 14/146 Deeds contain language making a secondary conveyance to the railroad for the purpose of cuttings and embankments.  Pl. Mem. at 26.  But, a reading of the Backues 141/99 and Dreysse 14/146 Deeds (which apply to claims 2, 5, 6, 17a, and 20) makes clear that these secondary conveyances "for the purpose of

---

[11] The property descriptions in these source deeds also suggests that the parties intended to convey a broad easement to the railroad.  Notably, the property descriptions state that the property conveyed to the railroad is "[a] Strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the Railroad . . . ."  Def. Exs. 29, 31, 34-38; *see also* Def. Ex. 33 (conveying 200 feet with 100 feet on each side).  There is no limiting language in this description to indicate that the parties intended to limit the scope of the easement conveyed to the railroad.

cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid" involve different tracts of land that are also being conveyed to the railroad for this specific purpose. Def. Ex. 29 at 5-6; Def. Ex. 31 at 4. Given this, the Court does not read these secondary conveyances to limit the scope of the primary conveyances to the railroad. *Clevenger*, 210 S.W. at 868; *see* Def. Mot. at 31-32.

The secondary conveyances for the purpose of construction contained in the Linke 16/607 (claim 21); Ridenhaur 14/215 (claim 6); and Dreysee 14/146 (claim 17a) Deeds similarly fails to limit the primary conveyances to the railroad. These secondary conveyances grant the railroad temporary access to certain property for the purpose of construction, by conveying a "right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." Def. Exs. 31, 35-36. Like the Backues 141/99 and Dreysse 14/146 Deeds discussed above, the Linke 16/607 (claim 21); Ridenhaur 14/215 (claim 6); and Dreysee 14/146 (claim 17a) Deeds make clear that the secondary conveyances for construction involve different tracts of land than the property conveyed to the railroad in the primary conveyances. *Compare id.* (stating that the property conveyed for the purpose of constructing the railroad applies to the "adjacent land"), *with* Def. Exs. 29, 31 (conveying additional property to the railroad "for the purpose of cuttings and embankments"). And so, again, these secondary conveyances do not limit the scope of the primary conveyances to MCRR.

Lastly, the secondary conveyances for sidetracking—which can be found in the Stock 27/3 and Strehlmann 53/421 Deeds (claims 3 and 7)—also do not limit the primary conveyances to the railroad in those deeds. These conveyances convey a "strip and parcelle of land for extra right of way, side tracts, station grounds, commercial purposes, and for [a] highway," and an "extra right of way . . . twenty five (25) feet wide on each side of and adjacent to the above described right of way," respectively. Def. Ex. 38 at 4; Def. Ex. 37 at 4. Similar to the secondary conveyances discussed above, the secondary conveyances for sidetracking involve different tracts of land than the property conveyed to the railroad in the primary conveyances. Def. Exs. 37-38. And so, again, the secondary conveyances for the purpose of sidetracking do not limit the scope of the primary conveyances to the railroad. *Clevenger*, 210 S.W. at 868 (holding that primary conveyances were not limited by the secondary conveyances in the same deed).

Because the plain language in the applicable source deeds for the remaining nine claims in this action show that these deeds convey easements to MCRR that are not limited to use for railroad purposes—and that are also broad enough to encompass public recreational trail use—the Court **DENIES** plaintiffs' motion for partial summary judgment with respect to claims 2, 3, 5, 6, 7, 11, 17a, 20, and 21 and **GRANTS** the government's cross-motion for summary judgment with respect to these claims.[12]

## V.    CONCLUSION

In sum, the undisputed material facts in this matter make clear that MCRR owns the property associated with claims 1, 10, 13a, 13b, 19, 22a, 22b, and 23 in fee simple and that plaintiffs Wayne and Gloria Misner (claim 12) did not own property located adjacent to the rail corridor at the time of the issuance of the NITU.  In addition, the undisputed material facts show that the relevant source deeds for claims 2, 3, 5, 6, 7, 11, 17a, 20, and 21 convey easements to MCRR that are broad enough to encompass public recreational trail use.  And so, for the foregoing reasons, the Court:

1. **DENIES** plaintiffs' motion for partial summary judgment on liability; and
2. **GRANTS** the government's cross-motion for summary judgment on standing and title issues.

The parties shall **FILE** a joint status report on or before **November 9, 2018**, stating their respective views on how this matter should proceed in light of the Court's ruling on their cross-

---

[12] Because the Court concludes that the undisputed material facts in this matter show that:  (1) MCRR owns in fee simple the property associated with claims 1, 10, 13a and b, 19, 22a and b, and 23; (2) plaintiffs Wayne and Gloria Misner (claim 12) did not own any property located adjacent to the rail corridor at the time of the issuance of the NITU; and (3) MCRR owned easements for the property associated with the remaining claims that were broad enough to encompass public recreational trail use, the Court does not reach the issue of whether a permanent or temporary takings has occurred with respect to plaintiffs' claims.  The Court also observes that the parties do not directly address the issue of whether the easements acquired by MCRR have been terminated prior to the issuance of the NITU.  Pl. Mem. at 23-25 (arguing that railbanking forestalls abandonment); Def. Mot. at 4, 9 (stating that the railroad "still holds all of its property rights in the subject corridor"); *see Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996)).  And so, the Court also does not reach this issue.

motions for summary judgment.

Each party to bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge