# In the United States Court of Federal Claims

No. 16-995L
Filed: August 5, 2024

---

**DUANE OMAR BURNETT, et al.,**

               *Plaintiffs,*

**v.**

**THE UNITED STATES,**

               *Defendant.*

---

    *J. Robert Sears,* Baker, Sterchi, et al., St. Louis, Missouri, for plaintiffs.

    *Joseph H. Kim*, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., with whom were *David Harrington*, Assistant Chief, Natural Resources Section, and *Todd Kim*, Assistant Attorney General, Environment & Natural Resources Division, Washington, D.C., for defendant.

## OPINION

**FUTEY,** *Senior Judge.*

## I.        Introduction

    This "rails-to-trails" case has been ongoing since 2016 and involves 29 claims in various stages of resolution.  *See* Compl. ¶ 2. Plaintiffs own land situated along a rail corridor in Missouri, the Rock Island Line, once owned and operated by the Missouri Central Railroad Company ("MCRR") *Id.*  ¶¶ 3, 4. Plaintiffs allege a Fifth Amendment taking of their reversionary interest in certain property adjacent to the Rock Island Line, which was converted to a recreational trail in 2015 pursuant to the National Trails Systems Act, 16 U.S.C. §§ 1241-51. *See* Compl. ¶ 2.

    At issue now is plaintiffs' motion to revise a previous order of this Court, which determined that MCRR owned easements broad enough to encompass railroad use for nine of plaintiffs' parcels and denied partial summary judgment on these claims. *See* Pl.'s Mot. to Revise Interlocutory Order (Pl.'s Br.), ECF No. 113. Plaintiffs argue that the order should be revised in light of the Federal Circuit's recent decision in *Behrens v. United States*, which analyzed the same parcels on the same line and determined that the scope of MCCR's easement is limited to railroad purposes under Missouri law. *Id.* at 2.

## II.        Background

### a.  Relevant Factual Background

An extensive discussion of the facts of this case appears in this Court's previous opinions, see *Burnett v. United States*, 139 Fed. Cl. 797, 801-03 (2018) (hereinafter "Burnett I"), and *Burnett v. United States*, 154 Fed. Cl. 539, 543-44 (2021) (hereinafter "Burnett II"). Nonetheless, a brief recounting of the facts most relevant to plaintiff's instant motion may be useful.

Plaintiffs own land adjacent to a 144.3-mile railroad line, running along the center of the state of Missouri, commonly known as the "Rock Island Line." *See* Pl.'s Proposed Findings of Uncontroverted Fact (Mar. 16, 2018), ECF No. 38, at 2. Various railroad companies owned and operated the Rock Island line since its construction in the early twentieth century – the most recent being the Missouri Central Railroad Company ("MCRR"). *Id*. On November 18, 2014, MCRR filed a Verified Notice of Exemption to the Surface Transportation Board ("STB"), indicating its intent to abandon and discontinue its ownership of the Rock Island Line. *See Burnett II,* 154 Fed. Cl. at 544.  On December 16, 2024, the Missouri Department of Natural Resources filed a request for the issuance of a Notice for Interim Trail Use ("NITU") to allow the Department to negotiate with MCRR for the acquisition of abandoned line for use as a trail under the National Trails Systems Act, 16 U.S.C. §§ 1241-51. *See* Memorandum in Support of Pl.'s Cross-Motion for Sum. J. (Mar. 16, 2018), ECF No. 39, at 10.

On February 25, 2015, the STB issued the NITU, which was set to expire on February 21, 2019. *Id.* To date, no railbanking and interim-trail-use agreement has been established with respect to the Rock Island Line. *Id., see also Burnett II,* 154 Fed. Cl. at 544. Plaintiffs argue that the Fifth Amendment taking of their property occurred on this February 25, 2015, date – triggered by the issuance of the NITU. *See* Memorandum in Support of Pl.'s Cross-Motion for Sum. J., ECF No. 39, at 10, 22-30.

### b.  Procedural Background

This Court previously granted partial summary judgment in favor of defendant on most of plaintiff's claims, based on the three-step analysis set forth in *Presault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("Presault II"). *See Burnett I,* 139 Fed. Cl. at 814; and *Burnett II,* 154 Fed. Cl. at 549. In *Presault II,* the Federal Circuit established that liability for a taking in a rails-to-trails context is premised on the following questions:

1.  Who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;
2.  If the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of easement); and
3.  Even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple interest unencumbered by the easement (abandonment of the easement)?

*See Presault II,* 100 F.3d at 1533.

In *Burnett I,* the Court analyzed the first two *Presault II* factors. It determined that MCRR owned easements broad enough to encompass trail use on the parcels corresponding to the following nine claims numbers: 2 (Belle Community Fair, Inc.); 3 (Burnett); 5 (Durbin); 6 (Griggs); 7 (Holaway); 11 (Lemons); 17a (Seymour); 20 (Turner); and 21 (Zumwault). These claims form the basis of plaintiffs' pending motion to revise and will be hereinafter referred to as "the Nine." The Court first recognized (and the government conceded) that, under Missouri law, the source deeds conveyed only voluntary easements to MCRR as to the Nine, because the amount of consideration given for each easement was only one dollar. *See Burnett I,* 139 Fed. Cl. at 810-11. The Court then analyzed whether the scope of the easements included use as a public recreational trail. *Id.* at 810-14.

The Court declined to apply the specific Missouri statute that governs voluntary grants of real estate for aid in construction, accommodation, and maintenance of railroads, Mo. Rev. Stat. § 388.210. The Court explained that it was instead guided by the "cardinal rule" for deed interpretation under Missouri law, which is "to ascertain the intention of the parties and to give that intention effect." *Id.* at 805 (citing *Hinshaw v. M-C-M Props., LLC,* 450 S.W.3d 823, 827 (Mo. Ct. App. 2014). Accordingly, the Court looked to the intent of the parties in conveying the easements, as evidenced by language in the granting clauses of the source deeds, such as "grant, bargain, and sell." *Id.* at 812. The plain language of the deeds indicated that the parties "intended to convey a broad easement to the railroad." *Id.* On these grounds, the Court in *Burnett I* denied plaintiff's motion for partial summary judgment on liability and granted the government's cross-motion for summary judgment on standing and title issues.

In *Burnett II,* the Court addressed the third *Presault II* factor, focusing only on the issue of abandonment as relevant to the Nine. *Burnett II,* 154 Fed. Cl. at 542-43. The Court found that MCRR did not fully abandon their easements before the STB issued its NITU – and because no abandonment occurred, there was no taking under the Fifth Amendment. *Id.* at 548-49. The Court thus denied plaintiff's motion for partial summary judgment and granted defendant's cross motion for summary judgment. *Id.* at 549. The Court's opinion contained the only the following: "The Clerk is directed to enter judgment accordingly. No Costs." *Id.* The opinion was filed on June 28, 2021.

Early in the course of litigation, the parties agreed that MCRR held easements limited to railroad purposes for claim numbers 4a and b, 8, 9, 15, and 18. *See Burnett I,* 139 Fed. Cl. at 814, n. 3. The parties had yet to resolve the issue of damages for these six claims when the *Burnett II* opinion was filed. *See Burnett II,* 154 Fed. Cl. at 549, n. 1. These claims will be hereinafter referred to as "the Six."[1]

i. *Case Activity After* Burnett II

On the same day that the Court filed its *Burnett II* opinion, the Clerk's office entered an RCFC 58 judgment in favor of defendant. *See* Judgment (June 28, 2021), ECF No. 68. The judgment entered included the standard appeal language, notifying parties of the following: "as to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date,

---

[1] The Six were not before the Court in plaintiffs' prior motion for summary judgment as to the issue of abandonment, and thus were not addressed in *Burnett II.*

see RCFC 58.1, re number of copies and listing of all plaintiffs." *Id.* Shortly thereafter, the case was administratively closed.

Nothing happened for eighteen months. Then, on December 5, 2022, plaintiffs filed a "Motion to Establish Scheduling Order for the Purpose of Determining Damages and to Sever Certain Plaintiffs". *See* Pl.'s Mot. (Dec. 5, 2022), ECF No. 69. Plaintiffs alleged that that the Six – which the parties previously agreed covered parcels that contained easements limited to railroad purposes – were still pending and in need of resolution. *Id.* The Court reopened the case on February 2, 2023, to allow the parties to engage in discussions and resolve the Six. *See* Order Granting Pl.'s Mot. to Establish Scheduling Order (Feb. 2, 2023), ECF No. 80. The Six were eventually settled for a total of $50,089.02.[2] *See* Amended Order Granting Def.'s Mot. for Reconsideration (Jan. 25, 2024), ECF No. 104.

Before this settlement was reached, plaintiffs filed their pending "Motion to Revise Interlocutory Orders Under Rule 54(b)" concerning the Nine claims at issue in *Burnett II,* on March 8, 2024. *See* Pl.'s Br., ECF No. 113.[3]  Plaintiff's motion argues, essentially, that the recent decision in *Behrens v. United States,* 59 F.4th 1339 (Fed. Cir. 2023), represents an intervening change in controlling law rendering this Court's prior analysis incorrect as a matter of law, and thus, that, in light of *Behrens,* plaintiffs have been deprived of their right to just compensation for a Fifth Amendment taking as to the Nine.

ii. *The Federal Circuit's decision in* Behrens v. United States

On February 13, 2023, the Federal Circuit Court of Appeals decided *Behrens v. United States. Behrens* involved parcels affected by a NITU covering the same 144.3-mile corridor at issue in this case, the Rock Island Line. *See Behrens*, F.4th at 1342-43. *Behrens* also involved the same source deeds, or deeds containing the same language as the deeds in this case – in other words, deeds conveying voluntary easements for a consideration of one dollar. *See Behrens,* 59 F.4th at 1345 (explaining that, because each grant was to a railroad and for one dollar, the conveyances were voluntary grants, even though they were "worded as grants of fee simple estates."). The government had argued that, because the intent of the grantor controls under Missouri common law, and because the deeds did not contain express language evincing an intent to limit the easement to use for railroad purposes, the easements granted were broad enough in scope to encompass trail use. *Id.*

The Federal Circuit rejected this argument. Instead, the *Behrens* court explained that, as per Missouri statutory law, i.e., Mo. Rev. St. § 388.210(2), a voluntary grant "shall be held and used for the purpose of such grant only." *Id.* The court explained that the Missouri statute was designed specifically to limit voluntary easements granted to railroads to railroad purposes only and warned that "an overly broad reading of the voluntary grant statute would indeed by contrary to the legislative purpose behind the statute." *Id.* at 1348. Finding that trail use and railbanking

---

[2] The parties agreed to settle the Six for $37,092, plus an amount of $12,997.02 for interest through September 30, 2023, plus an additional daily interest at a rate of $6.09. *See* Pl.'s Notice of Certain Pl.'s Acceptance of the U.S.'s RCFC 68 Offers of Judgment, ECF No. 93

[3] Plaintiffs first filed a "Motion for Reconsideration" under Rule 59(a) on November 13, 2023. Recognizing that a motion for reconsideration under RCFC 59 would be untimely, the Court eventually denied this motion as moot and directed plaintiffs to file a new motion under Rule 54(b). *See* Order, ECF No. 96; *see also* Tr., (Jan. 25, 2024).

are not railroad purposes, the *Behrens* court held that the interim trail use triggered by the issuance of the NITU had exceeded the scope of the railroad's easements, and thus, Fifth Amendment takings had occurred with respect to those voluntary grants. *Id.* at 1348.

### iii. *The Pending Rule 54(b) Motion to Revise Interlocutory Orders*

Despite the somewhat complicated procedural posture of this case, the pending motion to revise under Rule 54(b) is fairly straightforward. To summarize, plaintiffs argue that *Burnett II* was an interlocutory order that does not preclude revision of this Court's decision as to the Nine, and that the order should be revised in light of *Behrens*. *See* Pl.'s Br., at 11; *see also* Pl.'s Reply in Support of Mot. to Revise (Pl.'s Reply), ECF No. 118, at 4, 8. Defendant argues that the judgment entered by the Clerk's office in June of 2021 was a final judgment that remains on the docket, and that plaintiffs should have proceeded under a different rule of this Court in seeking relief from that judgment. *See* Def.'s Opp'n to Pl.'s Mot. (Def.'s Br.), ECF No. 117, at 3-9

Accordingly, the Court must answer two questions. First, the Court must decide whether there has been a final judgment as to the Nine in *Burnett II*. Second, if there has not been a final judgment as to the Nine, the Court must decide whether *Behrens* in fact controls and warrants a revision of the Court's prior order.

Briefing on the motion has been completed, and the matter is now ripe for disposition.

## III.   Discussion

### a.   Legal Standards

#### i.   *Final Judgments*

RCFC 54(B) states that a "court may direct the entry of a final judgment as to one or more but fewer than all of the claims … *only upon an express determination that there is no just reason for delay and upon an express direction of the entry of judgment*." RCFC 54(b) (emphasis added). Moreover, RCFC 54(b) instructs that a court may revise a non-final partial judgment (i.e., an interlocutory order) at any time "before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Id.; see also Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 5-8 (1980).

An order granting partial summary judgment that does not make an express determination that there is no just reason for delay is not a final judgment under RCFC 54(b). *Koopmann v. United States*, 151 Fed. Cl 805, 807-08 (2021), aff'd, No. 2021-1746, 2022 WL 1073341 (Fed. Cir. Apr. 11, 2022). This is true even if the order expressly directs for the entry of judgment by the Clerk's office. *See Aleut Tribe v. United States,* 702 F.2d 1015, 1020-21 (Fed. Cir. 1983) (circuit court lacked jurisdiction over appeal where trial judge made express direction for entry of judgment but did not make express determination that there was no just reason for delay). These standards reflect the longstanding rule disfavoring piecemeal disposal of litigation in the federal courts. *Curtiss-Wright Corp.*, 446 U.S. at 8; *see also EJS Properties, LLC v. City of Toledo,* 689 F.3d 535, 537-38 (6th Cir. 2012).

ii.  *Standards Governing Motions to Revise Under RCFC 54(b) and Motions for Reconsideration Under RCFC 59(a)*

It may be useful to briefly clarify the standards governing motions under RCFC 54(b) and motions for reconsideration under RCFC 59, as the parties disagree about which rule applies here. While some decisions of the Court of Federal Claims have held that both Rule 54(b) and Rule 59(a) govern motions for reconsideration of non-final interlocutory orders, the Court declines to follow that route. *See, e.g., Enzo Biochem, Inc. v. Gen-Probe Inc.,* 414 F.3d 1376, 1380 (Fed. Cir. 2005); *but see Wolfchild v. United States,* 69 Fed. Cl. 779, 784 (2005). Instead, the Court agrees that an interpretation "utilizing RCFC 54(b) for interlocutory matters and Rule 59 exclusively for decision[s] that trigger final judgments [would] align this Court with the rest of the federal judiciary." *E&I Global Energy Services, Inc., v. United States*, 152 Fed. Cl. 524, 531 (2021).

Rule 59(a)(1) states, in pertinent part: "The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues – and to any party … for any reason for which a new trial has heretofore been granted in an action at law in federal court…". RCFC 59(a)(1)(A). A motion under Rule 59 is warranted only *after* a final judgment has been entered. *See E&I Global Energy Services,* 152 Fed. Cl. at 531. Motions for reconsideration under Rule 59(a) are evaluated under a heightened standard and "must be supported by a showing of extraordinary circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004).

Motions under RCFC 54(b) are governed by a far less stringent (and less uniform) standard. *See Fla. Power Light Co. v. United States,* 66 Fed. Cl. 93, 97 (2005) ("To apply final order review standards to non-final orders would undermine both the common law and RCFC 54 which explicitly states that non-final orders may be revisited at any time."). A judge has significant discretion under Rule 54(b) to reconsider non-final decisions "as justice requires." *E&I Global Energy Servs.,* 152 Fed. Cl. at 532. A non-final order under RCFC 54(b) may be revised on any ground consistent with the law of the case doctrine. *Florida Power & Light Co.*, 66 Fed. Cl. at 95. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)). A departure from the law of the case may be warranted, however, for any of the following reasons: (1) if an intervening change in controlling law has occurred, (2) if previously unavailable evidence is now available, or (3) if the motion is necessary to prevent manifest justice. *See Intergraph Corp. v. Intel Corp.,* 253 F.3d 695, 698 (Fed. Cir. 2001).

iii.  *Setting Aside a Judgment under RCFC 60(a) or RCFC 60(b)*

The parties also seem to disagree about the extent to which RCFC 60 applies, if it applies at all. Rule 60 of the Court of Federal Claims outlines various avenues for obtaining relief from a judgment. RCFC 60(a) states that a Court "may correct a clerical mistake or a mistake arising from oversight and omission whenever one is found in a judgment, order, or other part of the record" and instructs that a Court "may do so on motion or on its own, with or without notice.".

RCFC 60(a). Rule 60(b) lists the reasons for which a court "may relieve a party or its legal representative from a *final judgment*, order, or proceeding," which includes mistake, newly discovered evidence, fraud, if the judgment is void, or "any other reason that justifies relief." RCFC 60(b) (emphasis added).

Under RCFC 60(a), a court has power to correct non-substantive clerical errors[4] in the record, including judgments entered in error. *See American Trucking Assoc. v. Frisco Transp. Co.,* 358 U.S. 133, 145 (1958) (affirming the power of a court to correct judgments issued due to inadvertence or mistake); *see also A Squared Joint Venture v. United States*, 146 Fed. Cl. 705, 712 (2020). While a court may exercise significant discretion in correcting clerical errors under this rule, corrections must reflect the contemporaneous intent of both the court and the parties at the time the mistake was made. *See e.g., Reitz v. United States*, 37 Fed. Cl. 330, 334 (1997); *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009). ("Courts enjoy broad discretion to correct clerical errors in previously issued orders … to conform the record to the intentions of the court and the parties.").

Rule 60(b) applies only to final judgments, not interlocutory orders. *See Gravelle v. KABA Ilco Corp.*, No. 2020-1370, 2021 WL 3392772 at *2 (Fed. Cir. Aug. 4, 2021). RCFC 60(b)(4) is the mechanism allowing for relief specifically from void judgments. RCFC 60(b)(4). A void judgment is not one that merely contains a technical defect or is otherwise erroneous in some respect. *See Kennedy v. Sec'y of Health & Hum. Servs.,* 99 Fed. Cl. 535, 541 (2011), *aff'd*, 485 F. App'x 435 (Fed. Cir. 2012). Instead, a void judgment is "premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)); *see also Bucci v. Sec'y of Health & Human Servs.,* 32 Fed. Cl. 330, 334 (1994) ("A judgment is not void for purposes of Rule 60(b)(4) unless the court that issued the judgment lacked subject matter jurisdiction or "acted in a manner inconsistent with due process of law.") (internal citations omitted).

### b.   Analysis

#### i.   *Burnett II is not a final judgment under Rule 54(b)*

Plaintiffs contend that because *Burnett II* did not expressly indicate that there was "no just reason for delay," the opinion and order was not a final judgment as to the Nine, and thus, the prior opinion may be revised pursuant to Court's power under RCFC 54(b). *See* Pl.'s Br. at 3-8.  Plaintiffs argue that, even though there was a judgment entered in this case, it "could never have been a final judgment since it did not adjudicate all claims." *Id.*  The government's position, on the other hand, is that the June 28, 2021, judgment entered by the Clerk's office, ECF No. 68, was a final judgment that reached the Nine and consequentially precludes revision

---

[4] Federal courts seem to agree that the correction of an error of "substantive judgment" is outside the reach of the rule. *See Maxus Energy Corp. and Subsidiaries v. United States*, 313 F.3d 1135, 1139 (Fed. Cir. 1994); *see also Rivera v. PNS Stores, Inc.,* 647 F.3d 188, 194 (5th Cir. 2011) ("Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope; missteps involving substantive legal reasoning are not."); *see also Pfizer Inc. v. Uprichard*, 422 F.3d 124, 130 (3rd Cir. 2005) ("The relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error.").

of this Court's prior order. *See* Def.'s Br. at 1-3. Moreover, the government argues that plaintiff's prolonged period of inactivity after that judgment was entered renders any motion for reconsideration, or even any appeal, untimely. *See* Def.'s Br., at 3. While the Court is sympathetic to the government's position given the lengthy period of inactivity that followed the administrative closure of the case in 2021, the Court does not agree that *Burnett II* – and the subsequent judgment entered by the Clerk's office – represents a final judgment precluding revision of this Court's prior decision.

Plaintiffs rely on *Aleut Tribe v. United States,* in which the Federal Circuit held that it lacked jurisdiction to entertain an appeal from an interlocutory order that granted defendants' motion to dismiss only a portion of plaintiffs' claims. 702 F.2d at 1021; *see also* Pl.'s Br. at 4-5. The Court noted that, while the trial judge "did make an express direction for the entry of judgment," he did not "make an express determination that there is no just reason for delay." *Id.* at 1020-21. Accordingly, the Court determined that it could not hear an appeal of this order, because the "prerequisites for a Rule 54(d) certification" had not been met. *Id.* at 1021.

*Aleut Tribe* is particularly instructive here. Under RCFC 54(b), an order that adjudicates "fewer than all" claims in an action is not a final judgment until it has been properly certified by a trial judge. *See* RCFC 54(b). To be properly certified as a final judgment, an order must *both* expressly direct the entry of judgment and expressly determine that there is no just reason for delay in entering this judgment. *Id.* Although *Burnett II* did expressly direct the entry of judgment, it did not include an express determination that there is "no just reason for delay" in entering that judgment. *Id.; see also Aleut Tribe*, 702 F.2d at 1020-21. Accordingly, following the Federal Circuit's reasoning in *Aleut*, this Court's prior order in *Burnett II* fails to meet the RCFC 54(b) certification requirements, and accordingly, is not a final judgment within the meaning of this Court's rules.

Plaintiffs also cite to *Koopmann v. United States,* 151 Fed. Cl. 805, 807 (2021). *Koopmann* involved over 160 pro-se plaintiffs, and at issue was defendant's motion under 54(b) for final judgment for twenty-two previously dismissed plaintiffs. *See Koopmann,* 151 Fed. Cl. at 807. While the court granted defendant's motion to dismiss these twenty-two plaintiffs, the court neither expressly directed judgment to be entered, nor expressly determined that there was no just reason for delay. *Id.* The court recognized that "dismissed plaintiffs, whose dismissals are not final judgments, cannot appeal the court's dismissal orders." *Id.* (citing *Nystrom v. TREX, Inc.,* 339 F.3d 1347, 1350 (Fed. Cir. 2003)). Furthermore, in *Koopmann,* after the court certified the dismissal orders under RCFC 54(b), the Clerk's office filed separate documents specifically docketed as "Rule 54(b) Judgment(s)", entered pursuant to Rule 58, all of which included the "no just reason for delay" requirement. *See e.g.,* Judgment (Jan. 14, 2021), ECF No.  397, *Koopmann v. United States,* 151 Fed. Cl. 805 (2021); *see also Koopmann,* 151 Fed. Cl. at 907 ("Pursuant to Rule 58(a), 'every judgment … must be set out in a separate document.'"). In contrast, the document actually filed by the Clerk's office after *Burnett II* makes no mention RCFC 54(b), nor does it include the "no just reason for delay" language; instead, the document is styled as an RCFC 58 judgment adjudicating all claims. The the judgment entered in 2021 in this case could not have been a partial final judgment per RCFC 54(b) nor a final judgment ending the litigation entirely per RCFC 58, given that the Six were still pending at the time that document was filed.

The government also raises the argument that plaintiffs, as a matter of procedure, may not seek relief on their own accord under Rule 54(b). *See* Def.'s Br. at 6. The government points out that *Koopmann* involved only a motion for final judgment under RCFC 54(b), and that another case plaintiffs cite – *CB&I Areva Mox Servs. v. United States*, 141 Fed. Cl. 603 (2019) – involved a motion for *reconsideration*, not a motion to revise. *Id.* This argument is unavailing. Other decisions of this court have recognized that the "proper vehicle for motions for reconsideration of interlocutory orders" is RCFC 54(b). *E&I Global Energy Serv's,* 152 Fed. Cl. at 532-33; *see also Florida Power and Light Co.,* 66 Fed. Cl. at 97. While the government is correct to the extent that motions fashioned as motions "to revise interlocutory orders" may be somewhat uncommon in this court, the government is incorrect in its assertion that a motion seeking relief under rule 54(b) is procedurally defective.

Thus, because *Burnett II* was not a final judgment, RCFC 59 does not govern plaintiffs' motion to revise. *See Florida Power and Light Co.,* 66 Fed. Cl. at 96. Instead, *Burnett II* is an interlocutory order that may be revised "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b); *see Sacramento Grazing Ass'n*, *v. United States,* 154 Fed. Cl. 769, 777-78 (2021).[5]

        ii.   *Behrens represents an intervening change in law that must control the disposition of the Nine*

Plaintiffs contend that the Federal Circuit's 2023 decision in *Behrens v. United States* conflicts with this Court's prior determination that the easements held by MCCR on the parcels corresponding to the Nine are easements broad enough to encompass trail use under Missouri law. *See* Pl.'s Br. at 8-11. Plaintiffs are correct.

Previously, this Court found that "the plain language in the source deeds makes clear that the parties intended to convey a broad easement to the railroad" and concluded that the source deeds corresponding to the Nine "convey easements that can encompass public recreational trial use." *Burnett I,* 139 Fed. Cl. at 812. However, in *Behrens,* the Federal Circuit expressly rejected the idea that it is the intent of the parties that controls the scope of the easement when that intent conflicts with a positive rule of law. *Behrens*, 59 F.4th. at 1345. Instead, a Missouri statute – Mo. Rev. St. § 388.210(2) – explicitly limits the voluntary grants at issue, in both *Behrens* and in this case, to railroad purposes. *See id.* at 1346 ("Therefore, by statute, railroad purposes are the only allowable purposes of the granted easements and define the scope of the easements.").

An intervening change in controlling law is found where a previous decision of a Court is "clearly irreconcilable" with the reasoning or analysis in an intervening higher authority. *See e.g., Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir. 2003). The *Behrens* decision represents an intervening change in controlling law that warrants a departure from the law of the case doctrine governing motions to revise under RCFC 54(b). *See Intergraph Corp.,* 253 F.3d at 698. The Federal Circuit's analysis in *Behrens is* "clearly irreconcilable" with this court's prior opinion because both cases arise from essentially the same facts. *See Miller,* 335 F.3d at 900. For

---

[5] The government's argument that the judgment entered on January 26, 2024, *see* ECF No. 105, effectively forecloses any revision of the Nine is without merit, because that judgment was entered as a partial judgment under RCFC 54(b), and is only final as to the Six. *See* Def.'s Br. at 5-6.

example, In *Hardy,* rails-trails plaintiffs moved for reconsideration of the court's prior denial of summary judgment in light of the Supreme Court's decision in *Cedar Point Nursey v. Hassid. See Hardy v. United States,* 156 Fed. Cl. 340, 342 (2021). The court rejected the motion, determining that *Cedar Point* had no direct bearing on the case at bar. *Id.* at 345 Unlike in *Hardy,* the intervening change in law represented by *Behrens* has a direct bearing on this case. Not only did *Behrens* analyze identical issues and substantive rules of Missouri state law, *Behrens* also involved the same deeds or at least deeds with the same operative language, the same railway corridor, and the same NITU. *See* Pl.'s Br. at 9.

While *Burnett II* analyzed the same facts and issues under the same substantive sources of law as the *Behrens* court, it came to an entirely opposite conclusion. Thus, justice requires that the order be revised, and accordingly, that summary judgment be granted in favor of Plaintiffs as to liability for a Fifth Amendment taking of the Nine, which, under *Behrens,* represent easements limited to railroad purposes.

### iii.   *The Court can vacate the June 28, 2021, judgment under RCFC 60(a)*

Alternatively, the government argues that, if the Court believes the partial judgment entered in 2021 is void, plaintiffs' motion still must be rejected because it was not filed according to the correct procedural rule. Def.'s Br. at 4-6. Defendant believes that the Rules of the Court of Federal Claims provide an explicit avenue for relief, which is RCFC 60(b)(4). *Id.* In defendant's view, Rule 60(b)(4) is "the exclusive procedural avenue for seeking to set aside final judgments in civil cases." *Id.* at 4. And, because a motion under Rule 60(b)(4) is the exclusive avenue to set aside a judgment, plaintiffs have forfeited any such relief because a motion under this rule "must be made within a reasonable time." *Id.* at 6 (citing RCFC 60(c)(1)).

As a threshold matter, however, RCFC 60(b) applies only to final judgments, and therefore cannot be used to set aside the 2021 judgment entered in this case. *See Gravelle*, 2021 WL 3392772, at * 2. As explained earlier, this Court's order in *Burnett II* was an interlocutory order under the requirements of Rule 54(b). *See Aleut Tribe*, 702 F.2d at 1020-21. Thus, the Rule 58 judgment and accompanying document filed by the Clerk's office on June 28, 2021, could not have represented a final judgment triggering administrative closure of the entire case and starting the clock for appeal. *See* RCFC 58; *see also Burnett I,* 139 Fed. Cl. at 814, n. 3; *see Burnett II*, 154 Fed. Cl. at n. 1.[6]

The government contends that RCFC 54(b) "does not provide the Court with any authority to set aside a judgment." Def.'s Br. at 5. The Court, however, may, on its own discretion, fix non-substantive errors in the record under RCFC 60(a). *See Diversified Group Inc. v. United States,* 841 F.3d 975, 980 (2008). The Court will thus vacate the judgment entered, ECF No. 68, per its discretionary power through RCFC 60(a), to conform the record to what was

---

[6] The government's argument, that RCFC 60(b)(4) is the exclusive vehicle through which plaintiffs should seek relief, but that a motion under this subpart would nonetheless fail because the judgment is not void, *see* Def.'s Br. at 3, 7, misconstrues the nature of plaintiffs' motion. Plaintiffs are not arguing that the judgment is "void" within the meaning of RCFC 60(b)(4). *See* Pl.'s Reply, at 2-3. Instead, plaintiffs argue that *Burnett II* was not a final judgment as to the Nine. *Id.,* at 6-7. And, having established that *Burnett II* was not a final judgment, Rule 60(b) is inapplicable in this case. *See* RCFC 60(b); *see also CNA Corp. v. United States*, 83 Fed. Cl. at 7-8.

intended by both the parties and the Court at the time the Clerk's office filed the Rule 58 judgment document and administratively closed the case. *Agro Dutch Indus. Ltd.*, 589 F.3d at 1192 ("Courts enjoy broad discretion to correct clerical errors in previously issued orders … to conform the record to the intentions of the court and the parties.").[7]

## IV.    Conclusion

For the above stated reasons, it is hereby ordered that plaintiff's motion for partial summary judgment, as to liability for Fifth Amendment takings related to the Nine, ECF No.37, is **GRANTED**. The plaintiffs are entitled to damages for the Nine, as well as attorney's fees. No costs.

In addition, the Clerk is directed to vacate the Judgment entered on June 28, 2021, ECF No. 68, pursuant to RCFC 60(a).

Furthermore, the parties shall file a joint status report on or by **Friday, September 6, 2024**, to inform the Court as to the amount of damages agreed by them, or, if no agreement is reached, the parties shall submit a joint status report proposing a schedule for further proceedings.

It is so **ORDERED**.

s/ Bohdan A. Futey
**Bohdan A. Futey**
**Senior Judge**

---

[7] Plaintiffs claim that they are not asking for the June 28, 2021 judgment to be set aside. *See* Pl.'s Reply, at 6. Regardless, the Court has power to correct errors in the record, including errors in granting judgments. *See American Trucking Assoc.*, 358 U.S. at 145.